<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PNY TECHNOLOGIES, INC. et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action No. 11-4647 (SRC) |
| v. | : | |
| | : | |
| TWIN CITY FIRE INSURANCE CO., | : | OPINION |
| | : | |
| Defendant. | : | |
| | : | |

**<u>CHESLER</u>**, <u>District Judge</u>

This matter comes before this Court on two motions: 1) the motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, by Defendant Twin City Fire Insurance Company; and 2) the motion to strike an exhibit by Plaintiffs PNY Technologies, Inc. and PNY Technologies Europe (collectively, "PNY"). For the reasons stated below, Defendant's motion for summary judgment will be granted, and the motion to strike will be denied.

APPLICABLE LEGAL STANDARDS

**I.     Motion for summary judgment**

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of

the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring

nonmoving party to "set out specific facts showing a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## DISCUSSION

### I.     Defendant's motion for summary judgment

This is a dispute over insurance coverage between Plaintiffs, the insured parties, and Defendant, their insurer, under two policies for directors' and officers' liability insurance coverage (the "Policies"). Plaintiffs filed a Complaint which asserts three claims, two for declaratory judgment regarding coverage under the Policies, and one for breach of contract. Defendant has moved for summary judgment on all claims.

While Defendant moves for summary judgment on six grounds, this Court finds that Defendant has succeeded on two of those grounds and that the rest need not be reached: 1) the claims submitted by Plaintiffs to Defendant do not qualify for coverage under the language of the Policies; and 2) the claims submitted by Plaintiffs are excluded by the "Contractual Liability Exclusion" in the Policies.

There are no disputes about the basic facts in the case: Plaintiff PNY Europe's former Chief Financial Officer (the "CFO") entered into several foreign exchange transaction agreements with four banks.  The banks have demanded payments from Plaintiffs pursuant to those agreements.  Plaintiffs have submitted claims for coverage under the Policies, and Defendant has denied coverage.  PNY has subsequently settled the demands with three of the four banks; the dispute between PNY and the fourth bank is ongoing.  In the two declaratory judgment claims in the Complaint, Plaintiffs seek a declaration that Defendant is obligated to defend and indemnify Plaintiffs in their disputes with the banks over the foreign exchange transaction agreements.

The parties agree that Plaintiffs have sought coverage under the Policies based on this Policy language: the insurer "shall pay Loss on behalf of an Insured Entity resulting from an Entity Claim . . . for a Wrongful Act by an Insured Entity."  (56.1 Stmt. ¶ 3.)  The Policies define a "Wrongful Act" as "any actual or alleged act, error, omission, neglect, breach of duty, misstatement or misleading statement by the Company."[1]  (56.1 Stmt. ¶ 5.)

The Policies provide a definition of "entity claim" which includes four categories of such claims.  There is no dispute that the part of the definition most relevant to this case is: "'Entity Claim' means (1) any written demand for monetary damages or other civil relief commenced by the receipt of such demand . . ."  (56.1 Stmt. ¶ 4; Insua Dec. Exs. A, B; Casher Dec. Exs. A, B).  There is also no dispute that the CFO executed foreign exchange transaction agreements with

---

[1] Although the parties agreed in their Rule 56.1 Statements that this was the Policy definition of "wrongful acts," the actual policies contained in the exhibits show a slightly different wording: "any actual or alleged . . . error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed . . . by an Insured Entity." (Insua Dec. Exs. A, B; Casher Dec. Exs. A, B).  These small variations in wording have no material impact on this case.

four banks, and that these banks have made written demands for payment under these agreements, seeking roughly 50 million dollars. (56.1 Stmt. ¶ 14; Pls.' Supp. 56.1 Stmt. ¶¶ 83, 84.)

The New Jersey Supreme Court has summarized the law of interpretation of insurance policies as follows:

> Insurance policies are construed in accordance with principles that govern the interpretation of contracts; the parties' agreement will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled. The terms of insurance contracts are given their plain and ordinary meaning, with ambiguities resolved in favor of the insured. Nonetheless, courts cannot write for the insured a better policy of insurance than the one purchased.

Memorial Properties, LLC v. Zurich American Ins. Co., 210 N.J. 512, 525 (2012) (citations omitted). "While coverage provisions are given a broad interpretation by the courts, a strict interpretation is required when there is an exclusion clause which is also strictly construed against the insurer." Stafford v. T.H.E. Ins. Co., 309 N.J. Super. 97, 103 (N.J. Super. Ct. App. Div. 1998). Nonetheless, in that same decision, the Appellate Division held:

> We recognize that if there is a second fair interpretation of an exclusion available to an injured plaintiff, the insurance policy will be construed for coverage against the insurer. This does not mean however that any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage.

Id. at 105 (citations omitted). This motion does not, however, raise any issues of ambiguity in the Policies. Plaintiffs do not argue that the policy is ambiguous in any way. As such, the Policies will be enforced as written.

Defendant argues that none of the banks' demands for payments qualifies as an entity claim for a wrongful act, and so Plaintiffs' claims are not covered by the Policies. Rather, Defendant contends, the banks take the position that the foreign exchange transaction agreements

are legitimate and not the product of wrongful acts; it is only Plaintiffs that assert that the transaction agreements are the result of wrongful acts by the CFO. Plaintiffs' opposition brief fails to recognize this crucial point and does not counter it. There is no dispute that the "entity claim" here refers to the banks' demands for payment under the foreign exchange transaction agreements. This Court agrees with Defendant that the banks have not made any entity claim for a wrongful act by an insured entity. Rather, this Court is persuaded that the banks' position is, as it must reasonably be, that these agreements are valid, and therefore enforceable against Plaintiffs. The banks do not seek payment from Plaintiffs because they assert that Plaintiffs or Plaintiffs' agent wronged them. The facts are, as Defendant observes, exactly opposite: the banks seek payment of obligations they contend are valid. The banks' demands do not qualify as claims for wrongful acts by an insured entity, and do not trigger a coverage obligation under the Policies. This provides a sufficient basis to grant Defendant's motion for summary judgment.

As noted, Plaintiffs do not respond to Defendant's contention that none of the banks' demands for payments qualifies as an entity claim for a wrongful act. Instead of addressing the question of whether the banks' demands fall within the scope of the policy phrase, "an entity claim for a wrongful act," Plaintiffs narrowly focus on the term, "wrongful act," arguing that the CFO's execution of the contracts was a wrongful act. This argument fails because it ignores the context in which "wrongful act" appears in the key Policy provision. The Policies do not cover wrongful acts; they only cover entity claims for wrongful acts. Plaintiffs fail to recognize this distinction, and they fail to persuade this Court that the bank demands are entity claims for wrongful acts.

Plaintiffs also confuse two distinctly different uses of the word, "claim." Plaintiffs have

submitted claims for coverage under the Policies to Defendant. The Policies cover "an entity claim for a wrongful act." The insurance claims which Plaintiffs submitted to Defendant are not the same as the entity claims made by the banks. Plaintiffs confuse the two, as in this heading: "The Underlying Claims Allege Wrongful Acts of PNYE, thus Triggering Coverage under the Policies." (Pls.' Opp. Br. 26.) It is only the claims submitted by Plaintiffs to the insurer that allege wrongful acts of PNYE; the entity claims made by the banks do not allege wrongful acts, and it is the entity claims which must do so to trigger coverage under the Policies.

Plaintiffs rely on the district court's decision in Sigma Chi Corp. v. Westchester Fire Ins. Co., 587 F. Supp. 2d 891, 897 (N.D. Ill. 2008), a case with fairly similar facts. This Court does not find the reasoning of Sigma Chi persuasive. In Sigma Chi, the court denied the insurer's Rule 12(c) motion for judgment on the pleadings on a breach of contract claim because it found a factual dispute over whether the entity's agent had the proper authority to execute the agreements at issue. The decision does not quote the relevant policy language, and there is no reason to believe that the policy language in that case is the same as the policy language in this one.

Plaintiffs argue that, following Sigma Chi, the CFO's unauthorized execution of agreements meets the policy definition of "wrongful acts," but gives no analysis of the policy language to justify that conclusory assertion. This Court's conclusion that the bank demands do not qualify for coverage does not, however, turn on interpretation of the policy definition of "wrongful act." Instead, "wrongful act" must be understood in the context of the entire phrase "an entity claim for a wrongful act by an insured entity." Plaintiffs have not argued, much less persuaded, that an "entity claim for a wrongful act" includes entity claims demanding payment of contractual obligations. Absent that, this Court agrees with Defendant that there is no evidence

7

in the present record of "an entity claim for a wrongful act by an insured entity."

Plaintiffs argue as well that coverage should be extended based on their reasonable expectations as an insured. It is true that New Jersey does apply a "reasonable expectations" principle in insurance coverage disputes under limited circumstances:

> [W]e have recognized the importance of construing contracts of insurance to reflect the reasonable expectations of the insured in the face of ambiguous language and phrasing, and in exceptional circumstances, when the literal meaning of the policy is plain.

Doto v. Russo, 140 N.J. 544, 556 (1995) (citations omitted). Plaintiffs have not argued that the Policy is ambiguous in any relevant or material way, nor have they argued that this case presents an exceptional circumstance. As such, this Court need not consider the objectively reasonable expectations of the insured.[2]

Defendant next argues that the Policies contain a Contractual Liability Exclusion ("CLE")

---

[2] Furthermore, even if this Court were to consider the objectively reasonable expectations of the insured, Plaintiffs have made no showing that their present expectations are objectively reasonable. It is interesting to note the insightful comments on this subject made by Judge Posner in Krueger Int'l, Inc. v. Royal Indem. Co., 481 F.3d 993, 996 (7th Cir. 2007), the case relied on by the Sigma Chi court:

> [I]nsurance policies are presumed not to insure against liability for breach of contract. The reason is the severe "moral hazard" problem to which such insurance would often give rise. The term refers to the incentive that insurance can create to commit the act insured against, since the cost is shifted to the insurance company. An example is the incentive to burn down one's house if the house is insured for more than its value to the owner. Or suppose, having somehow persuaded an insurance company to insure you against liability for breach of contract, you hire a contractor to build an extension on your house and after he has completed his work you refuse to pay him, and, when he sues, you turn his claim over to the insurance company.

Plaintiffs seem to contend that they expected their insurance policy to offer coverage that would give rise to such moral hazards. They have not shown this to be objectively reasonable.

which bars coverage for the bank demands.  This provision excludes coverage for any claim:

> based upon, arising from, or in any way related to any actual or alleged . . . liability under any contract or agreement, provided that this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement . . .

(Insua Dec. Exs. A, B; Casher Dec. Exs. A, B).  Defendant argues that the bank demands arise from liability under an agreement and any claims based on them are excluded by this provision.  Plaintiffs argue that the liabilities do not arise from a contract or agreement.  Plaintiffs also argue that the liabilities would have been incurred in the absence of the agreements.  Both arguments appear to contradict the plainly evident facts that the claims arose from liability under the foreign exchange transaction agreements, and that there would be no claims or liabilities absent those agreements.

Plaintiff attempts to obscure the evident facts with this argument: "PNYE's claims arise from [the CFO's] wrongful acts and not the putative agreements." (Pls.' Opp. Br. 29.)  This is unpersuasive.  The first problem is that, while PNYE's claims for coverage might arise from allegedly wrongful acts, the underlying entity claims do not.  The entity claims arise from the agreements and not from the CFO's allegedly wrongful acts, and Plaintiffs' insurance claims are related to alleged liability under the foreign exchange transaction agreements.  They are barred by the CLE.

Plaintiffs next delve into the law of agency to argue that a contract should not be enforced absent a finding that the principal vested the agent with authority to enter into the contract.  The validity or enforceability of the transaction agreements is not presently before this Court.  As Defendant contends, this is a defense that Plaintiffs might raise in an action against them by the

banks to enforce the contracts, but it does not change the nature of the banks' demands for payment.  The CLE excludes claims related to any alleged contractual liability.  It is undisputed that the bank demands allege contractual liability.  Plaintiffs' defenses to contractual liability are irrelevant to the operation of this exclusion provision.

Plaintiffs next cite the New Jersey Supreme Court's construction of "arising out of" in Flomerfelt v. Cardiello, 202 N.J. 432, 454 (2010), but their point is not at all clear.  As Plaintiffs contend, the New Jersey Supreme Court did hold that, in the context of construing an insurance policy exclusion provision, "arising out of" requires a "substantial nexus" with the excluded conduct for the exclusion to apply.  Id.  Plaintiffs have not offered any evidence which raises a factual dispute as to whether the bank demands for performance under the transaction agreements have a substantial nexus with the transaction agreements.  Plaintiffs try to confuse the issue by arguing that the CFO made "pre-contractual misrepresentations" which cannot be said to arise from the contracts.  (Pls.' Br. 33.)  This is way off track.

Summary judgment is appropriate in this case.  There are no material factual disputes.  There are no disputes about the meaning of the language of the Policies, although the Court interprets insurance policy language as a matter of law.  National Union Fire Ins. Co. of Pittsburgh PA v. Transportation Ins. Co., 336 N.J. Super. 437, 443 (N.J. Super. Ct. App. Div. 2001).  The terms of the Policies are clear and are given their ordinary meaning.  Plaintiffs have failed to raise any material factual dispute sufficient to defeat Defendant's motion for summary judgment.  This Court finds that Plaintiffs have not sought coverage of any entity claim for a wrongful act, and Plaintiffs' claims for coverage are also excluded by the "Contractual Liability Exclusion" in the Policies.  Defendant has shown that, as to the insurance claims at issue, it is

entitled to judgment as a matter of law: Defendant is not obligated under the Policies to defend or indemnify Plaintiffs in their disputes with the banks over the foreign exchange transaction agreements.  This resolves the two declaratory judgment claims in the Complaint.  As for the third claim, for breach of contract, Plaintiffs have failed to raise any factual dispute about whether Defendant breached any contractual obligations under the Policies.  Defendant's motion for summary judgment will be granted in its entirety.

Plaintiffs have moved to strike Exhibit Y to the Casher Declaration, submitted by Defendant in support of the motion for summary judgment.  This Court has decided the motion for summary judgment without reference to Exhibit Y.  The motion to strike will be denied as moot.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted, and judgment in Defendant's favor will be entered for all claims in the Complaint.  Plaintiff's motion to strike is denied as moot.

s/Stanley R. Chesler<br>
STANLEY R. CHESLER, U.S.D.J.

Dated: July 16, 2014